

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

WK:AMR
F. #2022R00940

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 12, 2022

<u>By E-mail and ECF</u>

The Honorable Taryn A. Merkl
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:    <u>United States v. Terrence Wise</u>
              <u>Docket No. 22-MJ-1254</u>

Dear Judge Merkl:

       The government respectfully submits this letter in support of its application for the entry of a permanent order of detention for the defendant Terrence Wise. As discussed more fully below, the defendant, a recidivist felon, used gasoline and improvised incendiary devices to set fires and damage property in Brooklyn, New York on four occasions between November 4, 2022 and November 9, 2022. Detention is necessary given the defendant's risk of flight, the violent nature of the conduct charged, the danger he presents to the community and his risk of flight.

I.  <u>Background</u>

    A.  <u>November 4, 2022: the Defendant Throws a Firebomb</u>

       On the evening of November 4, 2022, security camera video from a local business captured the defendant picking up a bottle from the ground on Belmont Avenue in East New York, Brooklyn, and carrying it into the driver's seat of a white U-Haul van with the words "$19$^{95}$ IN TOWN" in green on its side ("the White U-Haul Van"). The defendant then filled the bottle with gasoline from a red container and placed toilet paper into the mouth of the bottle, creating an improvised incendiary device, also known as a "Molotov cocktail"—effectively, a homemade firebomb. He then drove away from Belmont Avenue in the White U-Haul Van.

       Several minutes later, security camera video from a hotel at 369 Glenmore Avenue, approximately two blocks north of the area where the defendant had assembled the firebomb, showed him parking the White U-Haul Van and getting out of the driver's seat holding

the device, which was lit on fire. The defendant then threw his homemade bomb at a black van parked on Glenmore Avenue (the "Black Van"), causing a burst of flames, and drove away after a shot was fired in his direction.

B. November 7, 2022: the Defendant Ignites Two Fires Near the Black Van

Less than three days later, on the morning of November 7, 2022, the defendant again drove the White U-Haul Van onto the same block of Glenmore Avenue. Security camera video from the same hotel shows flames emerging from the front passenger side of the White U-Haul Van and landing on the Black Van, causing the Black Van to briefly catch fire.

Approximately 10 minutes later, the defendant returned to the same block of Glenmore Avenue and is captured on video bringing a red gasoline container out of the driver's seat of the White U-Haul Van. He carried the container toward the Black Van and remained behind it for approximately 20 seconds, during which time another fire ignited near the Black Van. The defendant then got back into the White U-Haul Van and drove away.

C. November 9, 2022: the Defendant Sets Fire to the White U-Haul Van

Two days later, on the evening of November 9, 2022, security camera from the same area of Belmont Avenue shown on November 4, 2022—which includes audio—captured the defendant exclaiming loudly that anyone who "got a contract on me" should "come see me" at "407 Montauk," an address in Brooklyn where the defendant is known to have lived at least as recently as March 2022. The defendant is shown having a loud argument with another person, throwing a red gasoline container onto the ground and getting into the driver's seat of the White U-Haul Van. The other person got into another van that rammed the White U-Haul Van, and the defendant emerged from the driver's seat in order to chase the other van with a bat in his hand.

After the other van drove away, the defendant announced, "Truck going on fire," and summoned another person to "Get that gas container. Get that gas container. Nobody's selling here. Bring that container. Get it quick." Approximately one minute later, a woman called out to the defendant using his nickname, and he turned his head and responded, "What?" He then used the red gasoline container to ignite a fire inside the White U-Haul Van, which expanded, damaging the White U-Haul Van for several minutes until it was ultimately brought under control by firefighters.

D. December 2, 2022: the Defendant Flees from Police and Is Apprehended

On December 2, 2022, police officers saw the defendant drive another U-Haul van through a stop sign near Miller Avenue and Livonia Avenue in Brooklyn. When the officers approached the defendant, he refused to shut off the U-Haul van and drove into the car in front of him. He then reversed, striking the police car, and drove away at high speed. Police officers pursued him to the intersection of Flatlands Avenue and Fountain Avenue—over a mile from the initial stop sign infraction—where the defendant crashed into a light pole and yet another car, causing injuries to a civilian. Police officers arrested the defendant and found a revolver in the U-Haul van near the front driver's side door.

The defendant was then placed in a police car and driven to the 75th Precinct. When the police car arrived at the precinct, the defendant opened the car door and ran on foot while handcuffed, making it approximately 30 feet before he was apprehended again.

E. The Defendant's Criminal History

The defendant's criminal history stretches back to the late 1980s and includes six felony convictions and seven misdemeanor convictions.[1] His felony convictions include a 1988 conviction for criminal possession of a weapon in the third degree, in violation of New York Penal Law ("N.Y.P.L.") Section 265.02, for which he was sentenced to one year in jail; three convictions in 1989, 1994 and 1997 for controlled substance crimes, each of which resulted in separate sentences of one and a half to three years in prison; a 2000 conviction for attempted robbery in the first degree, in violation of N.Y.P.L. §§ 110 and 160.15(3), for which he was sentenced to 51 months to five years in prison; and a 2008 conviction for burglary in the second degree, in violation of N.Y.P.L. § 140.25(2), for which he was sentenced to seven years in prison.

More recently, the defendant was convicted in 2014 of assault in the third degree, in violation of N.Y.P.L. § 120.00(1), a misdemeanor, and sentenced to four months in jail. In 2020, he was convicted of the misdemeanor of criminal obstruction of breathing, in violation of N.Y.P.L § 121.11 and sentenced to 30 days in jail. The defendant also has three pending cases in Kings County Criminal Court in which he is charged with a variety of theft-related crimes, possession of a controlled substance and assault, in addition to the charges arising from the December 2, 2022 incident described above. During one recent arrest, on October 6, 2022, the defendant locked his arms to avoid being handcuffed and tried unsuccessfully to run away from police officers. During another arrest six days later, on October 12, 2022, the defendant struggled at length with police officers who tried to arrest him, tensing his arms in an effort to avoid being handcuffed and refusing to open his fist in an effort to prevent the officers from finding drugs he was holding.

The defendant has been arrested under various dates of birth and various aliases, some similar to the name Terrence Wise and others as different as "Trevor Williams," "Terrence Banks," "Sean Wise" and "Tamlie Scott." On four occasions between 2000 and 2014, the defendant violated the conditions of parole and had to be returned to custody. In 1994, while a petit larceny case against him was pending, the defendant failed to appear in court and a bench warrant was issued. On December 2, 2022, hours before the flight from police described above, he failed to appear in Kings County Criminal Court in one of his pending cases.

II. Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding

---

[1] The government has requested additional information about these convictions and is awaiting a response from local authorities.

of dangerousness must be based on "clear and convincing evidence." See United States v. Williams, 654 Fed. Appx. 3, 3 (2d Cir. 2016) (summary order).  A defendant's risk of flight need only be based on a preponderance of the evidence.  See United States v. Boustani, 932 F.3d 79, 81 (2d Cir. 2019) (citing United States v. Sabhani, 493 F.3d 63, 75 (2d Cir. 2007)).  In meeting its burden, the government is "not…bound by the rules of evidence…and may proceed by proffer." See Williams, 654 Fed. Appx. at 3 (citing United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000).  In the pre-trial context, few detention hearings involve live testimony or cross-examination; most proceed by proffer.  LaFontaine, 210 F.3d at 131.  This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted); see also United States v. Mercedes, 254 F.3d 433, 437 ("[The defendant] has twice been convicted of weapon possession—one felony conviction, and one misdemeanor conviction.  We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

   The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

   Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense is a crime of violence or involves a destructive device; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release.  See 18 U.S.C. § 3142(g).

   Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial."  18 U.S.C. § 3142(e)(1).

III. Argument

   The factors specified in the Bail Reform Act all weigh heavily in favor of the defendant's detention.

  A. Nature of the Crime Charged

   The defendant's actions were extremely dangerous.  In all four of the November incidents outlined above, he committed potentially deadly acts of arson that created a mortal threat not only for his intended target, but also other people on the street, occupants of nearby businesses (such as the hotel at 369 Glenmore Avenue) and first responders.  The potential penalties reflect the seriousness of the charged conduct: if convicted, the defendant faces a minimum of five years in prison and a maximum of 20 years.

   In listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider

whether the crime charged is, among other things, a crime of violence or a crime involving an explosive or destructive device. See 18 U.S.C. § 3142(g)(1). The charged offense falls within both of these categories, confirming that this type of criminal conduct is sufficiently serious to factor against release on bond. See 18 U.S.C. § 3156(a)(4) (defining a "crime of violence" as "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another" or any felony that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"); 18 U.S.C. § 921(a)(4)(i) and (vi) (defining "destructive device" as, among other things, "any explosive, incendiary, or poison gas bomb"); see also United States v. Cruz, 492 F.2d 217 (2d Cir. 1974) (holding that Molotov cocktails are "destructive devices").

B. Weight of the Evidence Against the Defendant

The evidence against the defendant is overwhelming. Video from multiple security cameras shows the defendant, the arsons and the unmistakable bursts of flame that the defendant ignited in each one. One of those cameras also includes audio and captures the defendant shouting his own address and responding to his own nickname.

C. History and Characteristics of the Defendant

The defendant's long and serious criminal history, including his four parole violations, strongly suggests that detention is appropriate. The defendant's choice not to maintain a law-abiding life while under the stringent supervision of parole officers, most recently in 2014, demonstrates that no conditions of release will neutralize either the menace he presents to the community or his risk of flight. Moreover, his attempt to run from police officers on October 6, 2022, his struggle with police while trying to conceal contraband on October 12, 2022 and his two attempts to flee from police on December 2, 2022 showed that he is determined to avoid accountability and cannot be counted upon to appear in court under any conditions.

D. Seriousness of the Danger Posed by the Defendant's Release

The defendant poses an ongoing risk to the community. His conduct over approximately the past two months demonstrates his willingness to use violence when it suits him, and the rapidity with which his criminal conduct unfolded—including two arsons 10 minutes apart from each other—creates grave concern that if he is released, he will quickly return to committing acts that put the safety of the community in jeopardy.

IV. Conclusion

        For all of the foregoing reasons, the government respectfully submits that the Court should enter a permanent order of detention.

                                    Respectfully submitted,

                                    BREON PEACE
                                    United States Attorney

             By:            /s/
                                    Andrew M. Roddin
                                    Assistant U.S. Attorney
                                    (718) 254-6455

cc:      Counsel for Defendant